FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 28 2019

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, )
)
Plaintiff, ) CRIMINAL NO. 19-2880 MV
)
vs. ) Counts 1–4: 18 U.S.C. § 1343: Wire Fraud.
)
MICHAEL ALEXIS a.k.a. "Met ) 20-6053-Hunt
Bawi", )
)
Defendant. )

# INDICTMENT

The Grand Jury charges:

### Introduction

1. From on or about December 16, 2013 and continuing to on or about December 27, 2015, in the District of New Mexico and elsewhere, defendant, **MICHAEL ALEXIS**, and others known and unknown to the Grand Jury, knowingly and intentionally devised and executed a scheme and artifice both to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises. For the purpose of executing the scheme and artifice, defendant knowingly caused interstate and foreign wire communications to be sent.

### Background

2. At relevant times, defendant was an American citizen who maintained residences

1

in Georgia and Florida.

3. At relevant times, Victim A was a resident of Kansas.

4. At relevant times, Victim B was a resident of New Mexico.

## The Scheme and Artifice

5. Defendant executed a high yield investment fraud scheme. Victims were promised very high returns in very short periods of time, as much as 400% profit in a few weeks. Victims were also assured that there was little or no risk.

6. It was part of the scheme to defraud that defendant identified potential victims through a network of others who posed as financial brokers or investors. For example, Victim A was approached by an individual who he did not know. That individual then put Victim A into contact with another person who identified as a financial broker. The broker then directed Victim A to defendant. Victim B similarly made contact with an individual who claimed to be a businessperson. The businessperson introduced Victim B to the same financial broker. The broker and the business person then introduced Victim B to defendant.

7. It was further part of the scheme that defendant represented himself to be a banker or investor named Met Bawi located in Switzerland.

8. It was further part of the scheme that defendant communicated with victims over Skype and through other electronic means to propose potential investments. The details of the investments varied and were deliberately kept vague. Defendant variously described the investments as, for example, the lease of a bank guarantee, bullet trades, or commodity and financial instrument speculation.

9. It was further part of the scheme that defendant promised very high yields in a short amount of time. For example, Victim A was promised a gross 500% return that would be

paid in less than 60 days. Victim B was promised a gross 500% return that would be paid in 45 days.

10. It was further part of the scheme that defendant presented victims with a contract with his company, RUNSS Ltd. On the contract, RUNSS purported to have an office in Zurich, Switzerland. The contracts were largely boilerplate and had few or no details regarding the purported investment, but did promise extremely high returns.

11. It was further part of the scheme that defendant represented to victims that the investments carried very little risk. If victims were hesitant, defendant would introduce Individual C as someone who could offer insurance on the transaction. Individual C was represented to be an Australian citizen with business ties to Hong Kong.

12. It was further part of the scheme that Individual C would communicate with victims and represent that his company, purportedly located in Hong Kong, could sell the victims an "insurance wrap" that would guarantee both their investment and their entire return. The investment would then be riskless. Individual C offered this insurance for only a few percent of the value of the initial investment.

13. It was further part of the scheme that Individual C would offer references in the United States who could vouch for him. For example, Individual C provided Victim A with contact information for an individual living in Florida. That individual vouched for Individual C and stated that he and Individual C had several successful transactions over ten years.

14. It was further part of the scheme that defendant would suggest using Attorney D as an escrow agent. Attorney D was a Florida attorney and the use of an American lawyer provided reassurance to the victims that defendant was legitimate.

15. It was further part of the scheme that the use of Attorney D's trust account helped avoid discovery of the scheme because such accounts are not subject to all reporting requirements to which ordinary bank accounts are subject.

16. It was further part of the scheme that upon receiving funds from a victim, defendant would instruct Attorney D to distribute the funds to him, Individual C, and various others including the financial broker and the individual who had vouched for Individual C. Defendant directed the disbursement of funds. No funds were sent to RUNSS, the company with which the victims had signed a contract.

17. It was further part of the scheme that Individual C received far more of the proceeds from the fraud than he quoted as a price for the purported insurance. For example, defendant and Victim A had agreed that defendant would cover the cost of Individual C's insurance, $48,000. Instead, after receiving funds from Victim A, defendant instructed Attorney D to send $165,000 to an account in Individual C's name at the Hong Kong Shanghai Banking Corporation. For Victim B, the cost of the insurance was to be $70,000. After receiving funds from Victim B, however, defendant instructed Attorney D to send $500,000 to the same account of Individual C's.

18. It was further part of the scheme that defendant made no effort to invest or trade with the funds received from the victims. Instead, he used the money to fund personal expenses for himself and his family and to gamble. For example, defendant instructed Attorney D to transfer approximately $89,000 to payoff a residential mortgage loan in the name of defendant's brother.

19. As a further example, after receiving funds from Victim B in October 2014, defendant instructed Attorney D to send $500,000 to an account at Bank of America for

4

American Solution Consulting Inc., a company defendant had incorporated and controlled. Over the next four months, defendant obtained six cashier's checks from that account totaling $327,000. All six cashier's checks were cashed by defendant at a Florida casino.

20. It was further part of the scheme that neither defendant nor Individual C ever paid any money back to the victims.

21. It was further part of the scheme that when the victims sought instead to collect from the insurance issued by Individual C's company, Individual C and defendant made repeated promises to eventually pay some amount of money. These repeated promises were calculated to delay the victim's recognition that they had been defrauded and delay any attempt they made to report the crime to law enforcement.

22. For example, Victim A sent funds in July 2014. On January 22, 2015 Individual C spoke to Victim A on the telephone and promised to pay in full by February 6, 2015. As a further example, Victim B sent funds in October 2014. On December 27, 2015, defendant emailed Victim B a letter from Individual C that made excuses for the failure to pay and promised that a first payment would be made by January 21, 2016. Despite these promises, Individual C did not make any payments to the victims.

## Counts 1 through 4

23. On or about the below dates, in the District of New Mexico and elsewhere, **MICHAEL ALEXIS**, for the purpose of executing the scheme and artifice to defraud and to obtain money and property under false pretenses, caused to be made the following wire communications:

| Count | Date | Description |
|---|---|---|
| 1 | October 6, 2014 | Wire transfer of $1,000,000 from Victim B to Attorney |

5

|   |   |   |
|---|---|---|
|   |   | D's Wells Fargo account ending 3749. |
| 2 | October 8, 2014 | Wire transfer of $500,000 from Attorney D's account to Individual C's Hong Kong Shanghai Banking Corporation Account ending 8888. |
| 3 | October 31, 2014 | Wire transfer of $500,000 from Attorney D's account to American Solution Consulting Corp. account at Bank of America ending 3911. |
| 4 | December 27, 2015 | Email communication from defendant to Victim B containing a promise from Individual C to pay by January 21, 2016. |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE ALLEGATION

Counts 1 through 4 of this indictment are incorporated as part of this section of the indictment as if fully re-alleged herein for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of an offense in violation of 18 U.S.C. § 1343, set forth in Counts 1 through 4 of this indictment, the defendant, **MICHAEL ALEXIS**, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s).

The property to be forfeited to the United States includes, but is not limited to, the following:

1. PERSONAL JUDGMENT

A sum of money representing the property constituting, or derived from, any proceeds

that defendant obtained, directly or indirectly, as a result of the offenses set forth in Counts 1 through 4.

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

/s/
_____
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney
08/23/19  2:02PM